# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. JENNIFER WHITE,<br><br>        Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,<br><br>        Defendants. | Civil Action No.: _____ |

## COMPLAINT

Dr. Jennifer White, a physician and researcher in cardiac surgery with significant expertise in prosthetic heart valve design, brings this action against Boston Scientific Corporation and Boston Scientific Scimed, Inc. for the correction of inventorship of U.S. Patent No. 8,992,608, titled, "Everting Heart Valve," and a related continuation patent application. The patent is presently the subject of a patent infringement lawsuit between Boston Scientific Corporation, Boston Scientific Scimed, Inc., and Edwards Lifesciences Corporation.

## THE PARTIES

1. The plaintiff, Dr. Jennifer White ("Dr. White"), is a former physician and researcher at the General Hospital Corporation d/b/a Massachusetts General Hospital ("MGH") in Boston, Massachusetts.

2. On information and belief, defendant Boston Scientific Corporation ("BSC") is a Delaware corporation having a principal place of business at 300 Boston Scientific Way, Marlborough, Massachusetts.

3. On information and belief, defendant Boston Scientific Scimed, Inc. ("BSSI") is a wholly-owned subsidiary of BSC, and as such, does business in Massachusetts from BSC's address at 300 Boston Scientific Way, Marlborough, Massachusetts.

## THE '608 PATENT

4. U.S. Patent No. 8,992,608, titled, "Everting Heart Valve" (the "'608 patent"), was issued by the United States Patent and Trademark Office on March 31, 2015. A copy of the '608 patent is attached as Exhibit A to this Complaint.

5. The issued '608 patent named Sadra Medical, Inc. ("Sadra") as the assignee. On information and belief, Sadra subsequently assigned rights in the '608 patent to BSSI.

6. BSSI purports to own all substantial rights in the '608 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements.

7. BSC purports to be an exclusive licensee of the '608 patent.

8. BSC and BSSI accuse Edwards Lifesciences Corporation's Sapien 3 Transcatheter Heart Valve of infringing the '608 patent, in a lawsuit currently pending in the U.S. District Court for the District of Delaware (Civil Action No. 16-cv-00275-SLR).

## THE '462 PATENT APPLICATION

9. U.S. Patent Application No. 14/873,462, titled, "Everting Heart Valve" (the "'462 patent application"), is pending at the United States Patent and Trademark Office, with a Notice of Allowance allowing claims 2-10, issued on April 24, 2017.

10. A copy of the '462 patent application is attached as Exhibit B to this Complaint. A copy of the Notice of Allowance is attached as Exhibit C to this Complaint. A copy of the '462 patent application's allowed claims is attached as Exhibit D (at pages 2 – 3) to this Complaint.

11. On information and belief, BSSI is the purported assignee of the '462 patent application.

## JURISDICTION AND VENUE

12. This action arises under the Patent Laws of the United States, 35 U.S.C. 100 *et seq.*, including 35 U.S.C. § 256.

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has supplemental jurisdiction over the conversion claim (Count III) pursuant to 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over BSC, at least because BSC is at home in Massachusetts, having its principal place of business in Marlborough, Massachusetts.

16. This Court has personal jurisdiction over BSSI at least because it is a wholly-owned subsidiary of BSC, and has purportedly licensed BSC, based in Massachusetts, rights to enforce the patent. The causes of action asserted herein further arise from BSSI transacting business in Massachusetts, through Sadra, its predecessor in interest. Specifically, Sadra met and communicated with Dr. White in Massachusetts, and engaged in discussions concerning minimally invasive heart valve replacement devices, inviting her to visit Sadra to help develop the inventions claimed in the '608 patent and the '462 patent application.

17. Venue is proper in this district pursuant to 28 U.S.C §§ 1391(a), (b) and (c).

## BACKGROUND

18. In August 2003, Dr. White met with the founder of Sadra, Mr. Amr Salahieh, in Boston, Massachusetts.

19.     During the August 2003 meeting, Dr. White and Mr. Salahieh discussed potential new intellectual property, including new patents, for Sadra products.  During this meeting, Mr. Salahieh invited Dr. White to collaborate with Sadra on among other things, a transcatheter heart valve ("THV") design.

20.     In September 2003, Dr. White met again with Mr. Salahieh in Boston, Massachusetts, where they discussed developing a THV for Sadra.  Subsequently, Mr. Salahieh invited Dr. White to brainstorming meetings in Los Gatos, California.

21.     In late October 2003, Dr. White attended the brainstorming meetings in Los Gatos, California.  These meetings included Mr. Salahieh and Mr. Robert Geshlider.

22.     At the brainstorming meetings, Dr. White met with Mr. Salahieh, Mr. Geshlider, and others, to brainstorm ideas for a THV replacement device that would, among other things, address the problem of sealing paravalvular leaks.

23.     At the brainstorming meetings, Dr. White disclosed and taught the Sadra group, including Mr. Salahieh and Mr. Geshlider, about using backflow blood to help create a seal, including "pockets" to stop paravalvular leaks.

24.     It was clear to Dr. White that prior to the brainstorming meetings, the persons she met with at Sadra (including Mr. Salahieh and Mr. Geshlider) did not possess the concept of using backflow blood to help create a seal, or "pockets" to stop paravalvular leak.

25.     At the brainstorming meetings, Dr. White also disclosed and taught the Sadra group, including Mr. Salahieh and Mr. Geshlider, about using a "commissure support element" attached to an expandable anchor.

26. It was clear to Dr. White that prior to the brainstorming meetings, the persons she met with at Sadra (including Mr. Salahieh and Mr. Geshlider), did not possess the concept of using a "commissure support element" attached to an expandable anchor.

27. After several days at the brainstorming meetings, Dr. White spent a day with Mr. Geshlider, designing development prototypes of new THVs with improved sealing mechanisms including her contributions of a plurality of "pockets," and a "commissure support element" attached to an expandable anchor. These prototypes (and information derived therefrom) and Dr. White's other disclosures to Sadra, were wrongly and improperly used by Sadra (and its successors in interest) to obtain the '608 patent and file the '462 patent application.

28. On June 26, 2009, unbeknownst to Dr. White, Sadra filed with the United States Patent and Trademark Office, U.S. Patent Application No. 12/492,512. The patent application issued on March 31, 2015 as the '608 patent.

29. The '608 patent claims a system for replacing a heart valve that purports to solve the problems associated with paravalvular leakage, including a "fabric seal" that "defines a plurality of pockets," and a "replacement valve commissure support element attached to [an] expandable anchor."

30. The '608 patent names as its inventors Mr. Salahieh and Mr. Geshlider, among others.

31. The '608 patent does not name Dr. White as an inventor.

32. On October 2, 2015, unbeknownst to Dr. White, Sadra filed the '462 patent application with the United States Patent and Trademark Office.

33. The '462 patent application claims a medical device that purports to solve the problems associated with paravalvular leakage, including providing a "sealing element between the replacement valve and a patient's native valve." (Ex. D, at page 2.)

34. The '462 patent application names as its inventors Mr. Salahieh and Mr. Geshlider, among others.

35. The '462 patent application does not name Dr. White as an inventor.

## COUNT I
## CORRECTION OF INVENTORSHIP OF THE '608 PATENT

36. The allegations of paragraphs 1 through 35 above are incorporated by reference into Count I as though fully set forth herein.

37. Dr. White is at least a co-inventor of claims 1 through 9 of the '608 patent, because she contributed in a significant manner to the conception and reduction to practice of the inventions claimed in claims 1 through 9 of the '608 patent.

38. Dr. White's contributions of at least the "pockets" and the "commissure support element" to the inventions are significant when measured against the full scope of the inventions.

39. Dr. White's contributions to the inventions included more than the mere explanation of well-known concepts or the current state of the art.

40. Dr. White was omitted as a named inventor of the '608 patent, without Dr. White's knowledge, and without an intent to deceive on Dr. White's part.

41. Dr. White is at least a co-inventor of the '608 patent, and hereby requests that the Court order the correction of the inventorship of the '608 patent to name Dr. White as the inventor or a co-inventor.

42. Dr. White did not assign her rights in the '608 patent to any person or entity, and remains the rightful owner of her rights in the '608 patent.

43.     Dr. White has been damaged by her omission as a named inventor, at least because she was not able to benefit from ownership rights to the '608 patent, such as the right to license the '608 patent to others for value.

44.     Dr. White will continue to incur harm caused by the incorrect naming of inventors with respect to the '608 patent, as least because the '608 patent is the subject of a patent infringement lawsuit in which Dr. White is not named as a plaintiff.  Dr. White is therefore irreparably harmed by the continuation of the infringement lawsuit, and has no adequate remedy at law.

## COUNT II
## CORRECTION OF INVENTORSHIP OF THE '462 PATENT APPLICATION

45.     The allegations of paragraphs 1 through 44 above are incorporated by reference into Count II as though fully set forth herein.

46.     Dr. White is at least a co-inventor of the allowed claims of the '462 patent application, because she contributed in a significant manner to the conception and reduction to practice of the inventions in allowed claims 2 through 10.

47.     Dr. White's contributions of at least the "sealing element," among others, is significant when measured against the full scope of the claimed inventions.

48.     Dr. White's contributions to the claimed inventions included more than the mere explanation of well-known concepts or the current state of the art.

49.     Dr. White was omitted as a named inventor of the '462 patent application, without Dr. White's knowledge, and without an intent to deceive on Dr. White's part.

50.     Dr. White is at least a co-inventor of the patent that will issue from the '462 patent application, and hereby requests that the Court order the correction of the inventorship of the '462 patent application to name Dr. White as the inventor or a co-inventor.

51. Dr. White did not assign her rights in the '462 patent application to any person or entity, and remains the rightful owner of her rights in the '462 patent application.

52. Dr. White has been damaged by her omission as a named inventor, at least because she was not able to benefit from ownership rights to the '462 patent application, such as the right to license the '462 patent application, and the patent that will issue therefrom, to others for value.

## COUNT III
## CONVERSION UNDER CALIFORNIA LAW

53. The allegations of paragraphs 1 through 52 above are incorporated by reference into Count III as though fully set forth herein.

54. Dr. White, as an inventor, owns or otherwise has the right to possess at least the intellectual property that she disclosed and taught to the persons she met with at Sadra in Los Gatos, California, including Mr. Salahieh and Mr. Geshlider.

55. BSSI and BSC through Sadra, their predecessor in interest, improperly and wrongfully exercised dominion over such intellectual property to obtain the '608 patent and to file the '462 patent application, without authorization from Dr. White and without naming Dr. White as an inventor.

56. BSSI and BSC's improper use of Dr. White's intellectual property, without authorization, is contrary to and inconsistent with Dr. White's property rights.

57. BSSI and BSC's improper use of Dr. White's intellectual property has caused damage to Dr. White, at least because Dr. White had and has no opportunity to license the '608 patent or the '462 patent application (and the patent that will issue therefrom) to others, because she was omitted as a named inventor.

## DEMAND FOR JURY TRIAL

Dr. White demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Dr. White prays for relief as follows:

(a) that the Court enter judgment declaring that Dr. White is the inventor or a co-inventor of the '608 patent and the '462 patent application;

(b) that the Court enter judgment ordering the Director of the United States Patent and Trademark Office to issue a certificate correcting the inventorship of the '608 patent and the '462 patent application, adding Dr. White as the inventor or a co-inventor;

(c) that the Court award Dr. White damages, including damages due to BSC and BSSI's wrongful conversion of Dr. White's intellectual property;

(d) that the Court order that if BSC and/or BSSI licenses the '608 patent and/or the '462 patent application before this case is resolved, that any licensing fees be put into an escrow account, pending the resolution of this case and any claim by Dr. White to such fees;

(e) that the Court award Dr. White her costs and reasonable attorneys' fees; and

(f) that the Court grant Dr. White any other relief that the Court may deem just.

| | |
|---|---|
| Dated: June 6, 2017 | Respectfully submitted, |

                                                */s/ Steven M. Bauer*
                                                Steven M. Bauer (BBO No. 542531)
                                                Safraz W. Ishmael (BBO No. 657881)
                                                PROSKAUER ROSE LLP
                                                One International Place
                                                Boston, MA  02110
                                                Tel:  (617) 526-9600
                                                Fax:  (617) 526-9899
                                                sbauer@proskauer.com
                                                sishmael@proskauer.com

                                                **ATTORNEYS FOR**
                                                **DR. JENNIFER WHITE**